UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GARY L. KATSANIS,

                            Plaintiff,

        -vs-                                              07-CV-696C

BLUE CROSS AND BLUE SHIELD ASSOCIATION,

                            Defendant.

## BACKGROUND and FACTS

This is an action, brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.,* in which plaintiff seeks benefits under the long term disability plan of his former employer, Excellus Health Plan, a nonprofit independent licensee of defendant Blue Cross and Blue Shield Association ("BCBSA"), the plan sponsor and administrator. Plaintiff was employed by Excellus from April 1992 until July 1, 2002, at which time he stopped working for medical reasons. His employment was terminated on January 3, 2003 when he was unable to return to work. Defendant approved plaintiff's claim for disability benefits for the period January 1, 2003 through December 31, 2004, but limited his benefits to this 24-month period, having found that plaintiff was primarily disabled due to a mental health condition.

Defendant has submitted three documents which it states comprise the Non-Contributory National Long Term Disability Program: 1) the National Long Term Disability Trust Agreement between BCBSA and Banker's Trust Company (the "Trust Agreement") effective February 1, 2000; 2) the Non-Contributory National Long Term Disability Program

Document (the "Program Document," Exh. A to the Trust Agreement) effective January 1, 2002; and 3) the National Long Term Disability Program Association Agreement Blue Cross and Blue Shield Association and Participating Plan (the "Association Agreement," Exh. B to the Trust Agreement) effective January 1, 2002 (Item 30, Exh. 1). Additionally, defendant has submitted a declaration of Barbara J. Grant, Director of the National Employee Benefits Administration for BCBSA, the administrator of the Non-Contributory National Long Term Disability Program (Item 30, Exh. 2). Ms. Grant stated that although the program documents governing plaintiff's disability claim were not formally executed until January 3, 2003, the terms of the program were settled well before that time. *Id.,* ¶ 4. Participating employers, such as Excellus, may choose certain terms to suit their preferences, but the majority of the program terms are fixed and remain the same for all participating employers. *Id.,* ¶ 5. Excellus was provided the template program documents and alternatives for elective terms in 2001. *Id.,* ¶ 6. Additionally, the variable terms were summarized in a matrix which was used as a guideline in administering claims. *Id.,* ¶ 7. The matrix document, effective January 1, 2002, is appended as an exhibit to the Grant declaration (Item 30, Exh. 2).

Plaintiff instituted this action on October 18, 2007 (Item 1). Defendant filed its answer to the complaint on December 11, 2007 (Item 5). At a conference on February 13, 2008, the court directed defense counsel to file a motion relating to the applicable standard of review. Defendant filed that motion on February 27, 2008 (Item 12), and plaintiff filed his response to the motion on April 9, 2008 (Item 20). At that time, plaintiff sought permission from the court to conduct specific limited discovery prior to submitting a more

formal response to the motion. The parties then agreed to a limited discovery schedule and additional briefing (Item 21).

On July 7, 2008, defendant filed an amended motion regarding the standard of review (Item 32). Plaintiff filed a response to the motion on August 1, 2008 (Items 33, 34). Defendant then filed a reply (Item 35). For the reasons that follow, the defendant's motion is granted, and the decision will be reviewed under a deferential standard and will only be reversed if shown to be arbitrary and capricious.

## **DISCUSSION**

It is well settled that a challenge to a denial of benefits under ERISA should be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If such discretion is given, a district court must review the administrator's denial of benefits deferentially, and may reverse only if the administrator's decision was arbitrary and capricious. *Id.* at 104.

Plaintiff states that no formal plan documents were executed by defendant until January 3, 2003, after plaintiff became disabled and was awarded disability benefits. He also argues that the only document relied upon by the administrator, the matrix document, does not contain an explicit reservation of discretion. In response, defendant states that the plan was in existence prior to the execution of the formal plan documents, and that the Trust Agreement and its two exhibits–the Program Document and the Association

Agreement–in addition to the matrix, constitute the plan documents and reserve full discretion in the administrator to determine all questions relating to plan benefits.

ERISA provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). According to ERISA, an "employee welfare benefit plan" is "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . [ *inter alia* ] disability . . . benefits . . . ." 29 U.S.C. § 1002(1). Additionally, a "'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994).

Defendant has submitted the three documents that governed the plan in July 2002. Plaintiff argues that these documents do not constitute plan documents because they were not executed in their final form until 2003. The documents–the Trust Agreement, the Program Document, and the Association Agreement–were provided to Excellus in 2001, contain all the terms and provisions of the plan, and clearly satisfy the criteria of a plan as stated in *Grimo*. *See Feifer v. Prudential Ins. Co. of America,* 306 F.3d 1202, 1209 (2d Cir. 2002) (program summary and accompanying memorandum constituted plan documents where they satisfied *Grimo* criteria and were the only written documents in existence at time of disability). The matrix document, which is merely a summary of the variable terms of the plan and which plaintiff asserts is the only controlling document, does not meet the *Grimo* criteria and is not a "plan" for ERISA purposes. Accordingly, the court concludes

that the plan documents submitted by defendant, in conjunction with the matrix, constitute "the plan" for purposes of ERISA.

Having reviewed the plan documents, the court further determines that they reserve in the administrator discretionary authority. The Program Document, Exhibit A to the Trust Agreement, provides that "[t]he determination as to whether a Participant is 'Disabled' shall be based on medical evidence satisfactory to the Committee in its sole discretion." (Item 30, Exh. 1, ¶ 1(p). Additionally, the Association Agreement, which is incorporated by reference in the Program Agreement (*Id.,* ¶ 9), provides that:

> The Committee shall have complete control of the administration of the Program, with all powers necessary or convenient to enable it properly to carry out its duties in that respect. Without limiting the foregoing, the Committee has the power to construe the Program and to determine all questions that may arise thereunder. The Committee determines all questions relating to the eligibility of employees of the Plan, and the amount of benefits under the Program to which a Participating Employee is entitled . . . . The decision of the Committee upon all matters within the scope of its authority shall be final except as otherwise provided by law.

*Id.,* § 6.

Although the Second Circuit does not mandate the use of specific verbiage, "the administrator's burden to demonstrate insulation from *de novo* review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999). "In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does." *Nichols v. Prudential Ins. Co. of America,* 406 F.3d 98, 108 (2d Cir. 2005). Language such as that contained in the plan documents here

5

establishes a subjective standard and is sufficient to trigger the arbitrary and capricious standard of review. *See Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441-42 (2d Cir. 1995) (plan vested administrator with complete discretion where it "shall determine conclusively for all parties all questions arising in the administration of the [Pension] Plan and any decision of such Committee shall not be subject to further review"); *Edwards v. Akzo Nobel, Inc.*, 193 F.Supp.2d 680, 684-85 (W.D.N.Y. 2001) (administrator had discretionary authority where plan documents gave pension committee "the power, authority and responsibility to . . . determine all benefits and the resolution of all questions arising in the administration, interpretation and application of the Plan . . ."). Accordingly, the court will apply a deferential standard of review and reverse only if the determination was arbitrary and capricious.

## **CONCLUSION**

The defendant's motion is granted. The court will conduct a telephone conference on February 17, 2010 at 11 a.m. The court will initiate the call.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: January 6, 2010
p:\opinins\07-696.dec2909

6