UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

GARY L. KATSANIS,

                                     Plaintiff,

              -vs-                                        07-CV-696C

BLUE CROSS AND BLUE SHIELD ASSOCIATION,

                                     Defendant.

―――――――――――――――――――――――――――


APPEARANCES:   CHIACCHIA & FLEMING (CHRISTEN ARCHER PIERROT, ESQ.,
               of Counsel), Hamburg, New York, for Plaintiff.

               SEYFATH SHAW LLP (JOHN T. MURRAY, ESQ., of Counsel),
               Atlanta, Georgia, for Defendant.

### INTRODUCTION

       This is an action, brought pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001, *et seq.*, in which plaintiff seeks benefits under the long-term

disability ("LTD") plan of his former employer, Excellus Health Plan ("Excellus"), a nonprofit

independent licensee of defendant Blue Cross and Blue Shield Association ("BCBS"), the

plan sponsor and administrator.   The plan provides that a participant who is disabled

primarily because of mental illness shall be limited to 24 months of LTD benefits.  Plaintiff

states that defendant improperly limited his benefits to a 24-month period after determining

that he was disabled as a result of a mental condition.   The case is currently before the

court on the defendant's motion for summary judgment.

## BACKGROUND and FACTS[1]

Plaintiff was employed by Excellus as a project manager from April 1992 until January 3, 2003 (AR 794, 132).  On November 15, 2002, plaintiff applied for LTD benefits under the BCBS employee welfare benefit plan.   The plan, governed by ERISA, is administered by the National Employee Benefits Committee ("NEBC") of BCBS, and the NEBC has delegated the day-to-day operation of the plan to the National Employee Benefits Administration ("NEBA") (Item 49, Att. 2, ¶¶ 5, 7, 8).   The plan provides that a participant in the plan is entitled to benefits only "if he is found, on the basis of medical evidence satisfactory to the Committee, to be Disabled"  (AR 873).   The plan further provides that "a Participant who is Disabled primarily because of mental illness shall not receive a Disability Benefit for a period in excess of 24 months . . ." (AR 881).

Plaintiff's application for LTD benefits was based on "chronic fatigue and insomnia, depression, persistent pain, confusion and difficulty thinking and reasoning and remembering." (AR 792). He also disclosed that he was being treated for a herniated disc, gastroesophageal reflux disease ("GERD"), and post-thoracotomy[2] pain.  *Id.*  In a letter dated January 27, 2003, BCBS notified plaintiff that the Medical Review Committee ("MRC") had reviewed his application and found that he was disabled.  The MRC approved his application for LTD benefits effective January 1, 2003 through March 31, 2003 and

---

[1]  The factual statement is taken from the complaint (Item 1), the parties' statements pursuant to Local Rule 56.1 (Items 49, 52), the Declaration of Barbara Grant (Item 49, Att. 2), and the Stipulated Administrative Record (Item 48).  References to the Administrative Record are denoted by "AR" and the page number.

[2]  A thoracotomy is the surgical removal of all or part of the lung through an incision in the side of the chest, or thorax.

instructed plaintiff to provide additional medical documentation of his disability (AR 723, 725).

Over the following several months, plaintiff was advised that his benefits were to be extended through November 30, 2003 (AR 683), May 31, 2004 (AR 671), June 30, 2004 (AR 638), and August 31, 2004 (AR 633).  In a letter dated June 24, 2004, plaintiff was advised that his LTD benefits were approved due to a "mental/nervous condition" and thus were subject to the 24-month limitation.  *Id.*  In a letter dated July 26, 2004, plaintiff was notified that his benefits were approved through December 31, 2004 (AR 593).  He was again advised that the MRC had approved his disability due to a mental/nervous condition and that, in such a case, LTD benefits were limited to a maximum of 24 months.  *Id.*  Plaintiff was reminded that his "last month of entitlement to benefits will be December 2004." Id.

On December 29, 2004, defendant advised plaintiff that the MRC had reviewed the medical evidence submitted to support the claim for LTD benefits and determined that "the medical evidence shows you are disabled primarily because of mental illness" and, as such, the claim for benefits was denied as of December 31, 2004 (AR 327).  Specifically, the MRC relied on:

1.  An independent medical evaluation ("IME") by Dr. Pierre Tariot, a psychiatrist, from September 2004 in which he observed a "probable mixed personality disorder" and opined that plaintiff's "cognitive symptoms . . . represent a manifestation of the axis-2 disorder" (AR 373);

2.   Neuropsychological evaluations by Dr. Mark Mapstone, PhD., a clinical psychologist, from 2002 and 2004.  In a report dated October 14, 2004, Dr. Mapstone

stated, "I continue to suspect that the etiology of [plaintiff's] cognitive complaints is mostly psychiatric rather than neurologic" (AR 58); and

3.  The results of a sleep study which found no sleep apnea, just poor sleep hygiene (AR 381-82).

The MRC also noted the opinions of plaintiff's primary care physician, Dr. James Budd, and his treating psychiatrist, Dr. Melvin Pisetzner.  In a report dated September 22, 2003, Dr. Budd stated that plaintiff suffers from a mood disorder and disorganized thinking, and that his "most intrusive problems are psychiatric" (AR 601).  After an office visit on July 6, 2004, Dr. Budd stated that plaintiff has "disabling neuropsychiatric difficulties" which are likely "multifactorial," caused by medication side effects, sleep disorder, mood disorder, and "likely some organic brain syndrome, possibly of degenerative type" (AR 609).  In a letter dated July 20, 2004, Dr Pisetzner stated that plaintiff was depressed and suffered from a "progressive decrease in cognitive functioning" (AR 463).  Dr. Pisetzner opined that an "undiagnosed deteriorating illness exists" and that plaintiff's "depression is secondary to the underlying neurological condition" (AR 463, 465).

In a letter dated December 23, 2004, plaintiff notified BCBS that he wished to appeal the denial of his LTD benefits (AR 257).  He acknowledged that "[m]ental health conditions affect my disability . . . [but] there is evidence that I have an additional medical problem, without a clear diagnosis, which is driving my disability."  *Id.*

In March 2005, plaintiff was evaluated by Dr. Heidi Schwartz, who noted that "previous neuropsychological testing has not documented an organic cause" of plaintiff's cognitive decline (AR 39).  She stated, "it remains unclear whether all of [plaintiff's] cognitive issues are psychiatric in nature (and if so, is this truly due to depression or an

4

underlying personality disorder), or whether there is a component of organic decline." *Id.*
In May 2005, Dr. Schwartz reported that plaintiff "continues to complain of cognitive
decline, but the etiology remains unclear" (AR 247).

In May 2005, plaintiff was evaluated for mold sensitivity by Dr. John Condemi, a
physician specializing in allergies and immunology.  Plaintiff was found to have several
allergies, but not toxic mold syndrome (AR 67).  Dr. Condemi also stated that plaintiff's
allergies could contribute to poor sleep patterns.  *Id.*

In July 2005, plaintiff was evaluated by Dr. Garrett Riggs, a neurologist.  Dr. Riggs
reviewed plaintiff's previous evaluations and noted plaintiff's normal MRI, negative blood
tests for lead and other heavy metals, and history of residual intercostal nerve damage
post-thoracotomy.  Dr. Riggs stated that his findings "point to fairly soft abnormalities of
frontal lobe function in the form of concreteness, circumstantiality, mild obsessive-
compulsiveness, perfectionism, distractibility, executive dysfunction, and viscous thought
processes " (AR 47).  Dr. Riggs' "overall inclination is to agree with previous consultants
that this most likely represents underlying psychiatric disease." *Id.*

Plaintiff's file was reviewed by a medical consultant, Dr. E. Richard Blonsky, clinical
professor of neurology at Northwestern University, who noted that testing was normal or
showed insignificant abnormalities (AR 139).  Dr. Blonsky opined that plaintiff's allergies
"cannot be the basis" for all of his problems and was unable to "identify an organic,
physical explanation for [plaintiff's] condition" (AR 140).

As Assistant Secretary to the NEBC, Barbara Grant was responsible for deciding
plaintiff's appeal.  In a letter dated October 13, 2005, Ms. Grant informed plaintiff that,
based on a review of the medical evidence and other documentation in support of his

5

appeal, she upheld the previous decision of the MRC denying his claim for LTD benefits

(AR 17).  Specifically, Ms. Grant relied on the opinions of Drs. Schwartz and Riggs and the

medical review by Dr. Blonsky to find: 1.) no evidence that plaintiff was disabled due to a

medical condition, and 2.) substantial evidence that plaintiff was disabled primarily because

of mental illness and thus ineligible for LTD benefits in excess of 24 months (AR 24).

Plaintiff commenced this action with the filing of a complaint on October 18, 2007

(Item 1).  He alleged that he was unable to work due to "physical impairments caused, in

part, by post-thoracotomy nerve damage, allergic fatigue and fibromyalgia."  *Id.,* ¶ 9.  He

stated that in limiting his disability benefits to 24 months, defendant

> failed to take into consideration the totality of Plaintiff's medical conditions
> and instead improperly held that Plaintiff must be primarily disabled due to
> a mental health condition because of an *alleged* lack of medical evidence
> that his disabilities result from a physical cause, despite the fact that Plaintiff
> provided,  among  other  things,  medical  evidence  from  two  medical
> professionals stating that his symptoms stem from a physical cause.

*Id.,* ¶ 11 (emphasis in original).

Defendant filed its answer on December 11, 2007 (Item 5).  Thereafter, at the

direction of the court, the defendant filed a motion seeking a determination of the

applicable standard of review and corresponding limitation of discovery (Item 12).  An

amended motion was filed on July 7, 2008 (Item 32).  In a Decision and Order filed

January 8, 2010, this court determined that the plan documents reserved in the

administrator the discretionary authority to determine eligibility for benefits.  Accordingly,

the court found that the administrator's decision should be reviewed under the deferential

arbitrary and capricious standard (Item 36).  *See Firestone Tire and Rubber Co. v. Bruch,*

489 U.S. 101, 115 (1989).

6

Plaintiff then sought certification of an interlocutory appeal (Item 39).  In a Decision and Order filed May 27, 2010, the court denied plaintiff's motion to certify an interlocutory appeal (Item 45).  Thereafter, on August 27, 2010, defendant filed a motion for summary judgment (Item 49).  Plaintiff filed a response to the motion on October 8, 2010 (Item 52), and defendant filed a reply on November 12, 2010 (Item 53).  The court declined to hear oral argument.  For the reasons that follow, defendant's motion for summary judgment is granted.

## DISCUSSION

Defendant has moved for summary judgment dismissing the action.  It contends that the decision to deny plaintiff's claim for continued LTD benefits, based on the determination that plaintiff's disability was primarily due to mental illness, was reasonable and supported by substantial evidence in the administrative record.  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no material fact issues exist for trial.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330-31 (1986).  Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial.  *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir. 1998) (citing *Celotex*, 477 U.S. at 322).  In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable

to the non-moving party and make all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

"[W]here the ERISA plan confers upon the plan administrator discretionary authority to 'construe the terms of the plan,' the district court should review a decision by the plan administrator under an excess of allowable discretion standard." *Frommert v. Conkright,* 535 F.3d 111, 119 (2d Cir. 2008), *reversed on other grounds,* 130 S.Ct. 1640 (2010) (citing *Nichols v. Prudential Ins. Co. of America,* 406 F.3d 98, 108 (2d Cir. 2005) (noting that the proper standard when a plan vests the administrator with discretionary authority is "abuse of discretion")). Under such a standard, an administrator abuses its discretion only when the administrator's actions are arbitrary and capricious. *See, e.g., Guglielmi v. Northwestern Mut. Life Ins. Co.*, 2007 WL 1975480, at *4 (S.D.N.Y. July 6, 2007) (quoting *Firestone,* 489 U.S. at 115). Because this is a "highly deferential standard of review, an administrator's decision should only be disturbed if it is without reason, unsupported by substantial evidence or erroneous as a matter of law, considering the relevant factors of the decision." *Guglielmi,* 2007 WL 1975480, at *4 (citations and internal quotations omitted). A district court must look to the administrative record as a whole in deciding whether the plan administrator's decision was without reason, unsupported by substantial evidence, or erroneous as a matter of law. *See, e.g., Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 19 (1st Cir. 2003) (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)). Plaintiff first argues that the court should consider defendant to have operated under a conflict of interest as both the payer of benefits and decision maker. *See Firestone,* 489 U.S. at 115 (if a benefit plan gives discretion to an

8

administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion); *see also Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 106 (2008) (a plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in *Firestone)*.  Defendant argues that while BCBS evaluates benefits claims, it does not pay benefits out of its own pocket to plan participants (Item 30, Exh. 2, ¶ 8). Benefits are paid through a non-reversionary trust that is funded by the participating employers.  The trust is tax-exempt, managed by an independent trustee, and the trust assets may not be used for any purpose other than the payment of benefits or administrative expenses.  *Id., ¶¶* 8-10.  Accordingly, BCBS contends that it does not operate under a conflict of interest as contemplated by *Firestone* and *Glenn.*

In the aftermath of *Glenn,* courts have re-examined this issue.  The Third Circuit, referring to *Glenn,* stated that "[t]he Supreme Court's broad view of whether a conflict of interest exists . . . encompasses an arrangement where an employer makes fixed contributions to a plan, evaluates claims, and pays claims through a trust."  *Miller v. American Airlines, Inc.,* ___ F.3d ___, 2011 WL 208291, at *6 (3rd Cir. January 25, 2011); *see also Burke v. Pitney Bowes Inc. Long-Term Disability Plan,* 544 F.3d 1016, 1026 (9th Cir. 2008) ("[E]ven when a plan's benefits are paid out of a trust, a structural conflict of interest exists that must be considered as a factor in determining whether there was an abuse of discretion."); *but see Lance v. Retirement Plan of Int'l Paper Co.,* 331 Fed.Appx. 251, 255 (4th Cir. 2009) (holding that because the plan's benefits are funded by a separate trust to which the employer does not have access for its own purposes, the plan does not

9

have significant incentives to benefit itself by denying benefits).  It does not appear that any court in the Second Circuit has examined this specific issue.  In any event, even if the court were to consider that BCBS operated under a structural conflict of interest, such a conflict is simply one factor to be considered when determining the lawfulness of the administrator's decision.  *See Glenn,* 554 U.S. at 116.  Moreover, as all claims are paid from a non-reversionary trust to which BCBS has no access and BCBS does not itself stand at financial risk, it is unlikely that any conflict affected the benefits decision.  Accordingly, the court affords little weight to the conflict of interest, particularly  in the absence of other factors in plaintiff's favor.[3]

Plaintiff further contends that the burden is on the defendant to show "clear evidence" that plaintiff is primarily disabled due to mental illness (Item 52, p. 7).  He states that there is evidence in the Administrative Record showing that his disability has an organic cause or, at the very least, the etiology of his cognitive difficulties is unclear.  The record indicates that while Dr. Pisetzner believed plaintiff suffered from a "progressive early dementing process," or "undiagnosed deteriorating illness,"  he was unable "to confirm this with either routine or psychological testing, neurology consultation or MRI or CAT" (AR 463).  Likewise, Dr. Budd opined that plaintiff suffers from "disabling neuropsychiatric difficulties" likely caused by, among other things, "some organic brain syndrome, possibly of degenerative type" (AR 611).  However, neither of plaintiff's treating physicians was able

---

[3]  Plaintiff argues that defendant's "late determination" that plaintiff was primarily disabled due to mental illness suggests a likelihood that the conflict of interest affected the benefit decision.  *See* Item 52, p. 5.  The record reflects that defendant found plaintiff to be disabled by a mental condition as part of its initial review in December 2002 (AR 732) and informed plaintiff in June 2004 that his benefits were subject to the 24-month limitation (AR 633).

to isolate a physical cause for plaintiff's cognitive difficulties.  Dr. Schwartz was unable to conclude whether plaintiff's cognitive issues were psychiatric or neurologic (AR 245).   In contrast, Dr. Riggs opined that plaintiff's cognitive issues represented an underlying psychiatric disease (AR 47), as did Dr. Tariot (AR 373) and Dr. Mapstone (AR 58).

The burden is not on defendant to show that plaintiff is disabled by a mental illness. The plan provides that a participant is entitled to benefits only if he is found, on the basis of medical evidence satisfactory to the committee, to be disabled (AR 873).  Additionally, courts have concluded that it is the claimant's burden to prove that his disability is not mental where the plan, as here, limits coverage for mental disability. *See Seaman v. Memorial Sloan Kettering Cancer Center,* 2010 WL 785298, *11 (S.D.N.Y. March 09, 2010) (plaintiff has burden of establishing disability is not based on mental illness following limitations period); *Sheehan v. Metropolitan Life Ins. Co.,* 368 F.Supp.2d 228, 264-65 (S.D.N.Y. 2005) (plaintiff failed to prove physical condition was disabling after limitations period).

Plaintiff also argues that he has presented a genuine issue of material fact that he is disabled by an organic physical impairment.  Specifically, he contends that Borderline Personality Disorder ("BPD") can be caused by physical factors and thus may be a physical disease, rather than a mental condition.   He also states that his cognitive function decreased following his thoracotomy and the residual intercostal nerve pain.  None of the medical professionals who evaluated plaintiff or reviewed his medical records, be they psychiatrists, neurologists, or clinical psychologists, suggested that plaintiff's personality disorder was caused by a physical condition.  Additionally, according to Dr. Budd, plaintiff reported on July 6, 2004 that his allergy symptoms were "generally under control" and post-

thoracotomy intercostal nerve pain was "much better" (AR 609).  There is nothing in the record to support a theory that plaintiff's cognitive issues were caused by allergies or post-thoracotomy pain.[4]

Here, plaintiff submitted no evidence that he was disabled by a physical illness or condition, but ample evidence that his cognitive functioning was a result of psychiatric illness.  In the face of medical opinions that plaintiff's cognitive issues were either caused by psychiatric disease, including depression and BPD, or alternatively by an undiagnosed and unnamed physical condition, it was not unreasonable for the administrator to conclude that the cause of plaintiff's disability was mental, not physical.  *See Seaman v. Memorial Sloan Kettering Cancer Center*, 2010 WL 785298, at *15 ("In the face of conflicting medical opinions regarding the relationship between [plaintiff's] diagnosed mental illnesses and [her] disability, where [administrator] lacked objective evidence supporting a non-mental cause of her disability, it was not unreasonable for [administrator] to conclude that the cause of the disability was a mental illness.").  Accordingly, the court finds that the administrator's decision to discontinue plaintiff's LTD benefits after the 24-month mental health limitation period was neither arbitrary nor capricious.

**CONCLUSION**

Defendant's motion for summary judgment is granted, and the complaint is dismissed.

---

[4] While Dr. Alice Hoagland of the Sleep Disorders Center of Rochester stated on May 9, 2005 that plaintiff "could be experiencing allergic fatigue," she stated that plaintiff's combination of medications "may be the best explanation for his excessive daytime sleepiness" (AR 203).

So ordered.

_____\s\ John T. Curtin\_\_\_
JOHN T. CURTIN
United States District Judge

Dated:    3/23                 , 2011
p:\pending\2007\07-696.mar1011